UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| JOE THORPE, | : | |
|        Plaintiff, | : | |
| | : | |
|     v. | : | No.  5:21-cv-2102 |
| | : | |
| TOWNSHIP OF SALISBURY, | : | |
| PENNSYLVANIA; SANDY NICOLO; | : | |
| DANIEL SELL; and DEBRA J. BRINTON; | : | |
|        Defendants. | : | |

_____

**O P I N I O N**
**Defendants' Motion to Dismiss, ECF No. 73 - Granted**

**Joseph F. Leeson, Jr.**                                        **September 25, 2023**
**United States District Judge**

## I.     INTRODUCTION

In this pro se § 1983 action, Plaintiff Joe Thorpe alleges the Township of Salisbury and

its employees violated his civil rights by executing a scheme to take possession of a public street

upon which he owned property, which caused damage to his land and property value.

Defendants have filed a Motion to Dismiss the Second Amended Complaint for failure to state a

claim and Eleventh Amendment immunity.  For the reasons set forth below, Thorpe has failed to

plead sufficient allegations to state a claim and all claims are dismissed with prejudice.

## II.     BACKGROUND

### A.     Procedural History

Thorpe initiated this action pro se pursuant to 42 U.S.C. § 1983.  Following receipt of

motions to dismiss, Thorpe filed a nearly identical Amended Complaint, as well as a motion for

temporary restraining order ("TRO") and preliminary injunction ("PI").  The request for a TRO

was denied and all defendants were directed to respond to the request for injunctive relief.  In addition to responding to the PI request, Defendants Township of Salisbury, Debra Brinton, Sandy Nicolo, and Daniel Sell ("Township Defendants") filed a motion for a more definite statement, while all the other defendants filed motions to dismiss.

In an Opinion and Order dated March 22, 2022, this Court denied Thorpe's motion for a preliminary injunction, but granted the Township Defendants' motion for a more definite statement, as well as the motions to dismiss filed by the other defendants.  *See* Opn. & Order, ECF Nos. 58-59.  Claims against defendants Michael Pochron and John Ashley were dismissed with prejudice.  *See id.*  Claims against defendants James Suhocki, Megan Suhocki (aka Megan Houck), Gregory Reihman, Donald Brinton, Michael Milkovitz, and Joelle Milkovitz were dismissed without prejudice and with leave to amend "[o]n or before April 15, 2022."  *See id.*

Thorpe failed to file an amended complaint by this date and, instead, filed a notice of appeal.  *See* ECF No. 60.  Because "Plaintiff elected to stand on his complaint by failing to timely file an amended complaint" against defendants James and Megan Suhocki, Reihman, Donald Brinton, and Michael and Joelle Milkovitz, "the dismissal became with prejudice."  *See* ECF No. 71. (citing *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 31 n.3 (3d Cir. 2011) (The plaintiff's "failure to amend his complaint in the time frame allotted by the District Court reflects his intention to stand on his complaint.")).  The Third Circuit Court of Appeals affirmed the denial of injunctive relief, but declined to address Thorpe's other issues for lack of jurisdiction. *See* ECF No. 70 (explaining: "an order that dismisses some, but not all, claims does not qualify as a final and appealable order unless the District Court certifies it pursuant to Federal Rule of Civil Procedure 54(b)" and there was "no such certification in this case").

Upon conclusion of the appellate proceedings, this Court issued an Order setting a new deadline for Thorpe to file a more definite statement as to his claims against the Township Defendants. *See* ECF No. 71. Thorpe thereafter filed his more definite statement against the Township Defendants in the form of a Second Amended Complaint containing seven (7) counts. *See* Sec. Am. Compl., ECF No. 72. In the section identifying the parties, Thorpe names only the Township Defendants. *See id.* ¶¶ 1-9. In the individual counts, however, he names defendants that were previously dismissed with prejudice or were never named in earlier pleadings. *See id.* ¶¶ 26-70. The counts are against the following: (I) the Township; (II) the Township, Megan Suhocki, and James Suhocki; (III) Reihman; (IV) Sweet Sensation Homes;[1] (V) the Township and Brinton; (VI) the Township and Nicolo; and (VII) the Township and Sell. At no time prior to filing the Second Amended Complaint did Thorpe seek to stay the time to file an amended complaint as to the claims originally dismissed without prejudice, nor did he seek reconsideration of the dismissal of such claims with prejudice based on his failure to timely file an amended complaint, challenge this Court's finding that he had elected to stand on his complaint, or request leave to file supplemental claims against new parties. None of the counts in the Second Amended Complaint specify a specific cause of action, but Thorpe generally alleges this Court has jurisdiction under 42 U.S.C. § 1983, the Fair Housing Act, the right to free speech under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the right to travel under the Fifth and Fourteenth Amendments. *Id.* ¶ 8.

---

[1]     Because Sweet Sensations Homes was not mentioned in any earlier pleadings and Thorpe neither sought nor was granted leave to file supplemental claims, none of the allegations in this count are discussed herein. *See* Sec. Am. Compl. ¶¶ 59-70.

B.      **Factual Allegations**

The Second Amended Complaint alleges the following:[2]

Plaintiff Joe Thorpe resides on E. Emmaus Avenue, Allentown, Pennsylvania, and his property has frontage on Trout Street, Salisbury Township.  *See* Sec. Am. Compl. ¶¶ 1, 12. Beginning on or about April 15, 2022, the Township blocked Trout Street, which is a public street, by using a chain.  *Id.* ¶ 11.  As a result, Thorpe is prevented from using that street for normal ingress and access to his property, and some of his neighbors have lost the use of their frontage on Trout Street as well.  *Id.* ¶ 13.  Some of those neighbors now exclusively use Thorpe's private driveway to access their properties.  *Id.* ¶ 14.  The excessive speeding traffic of these neighbors and their business providers is placing great wear and tear on and off Thorpe's driveway, causing damage to his property, and endangering Thorpe and his family.  *Id.* ¶¶ 14-15. Thorpe's driveway is a single lane road that crosses Trout Creek and its flood plain using a single lane bridge.  *Id.* ¶¶ 15-16.  The bridge cannot be crossed during heavy rain, snow, and ice, which restricts Thorpe's access to his home as well as access by ambulance, fire, and fuel services.  *Id.* ¶ 17.

Defendant Debra Brinton owns property that has frontage on Trout Street.  *Id.* ¶¶ 75-76. That property consists of a single-family home occupied by Brinton and her family and a second home next door.  *Id.*  Brinton is an employee, supervisor, and official of the Township.  *Id.* ¶¶ 3, 77.  Brinton has the authority to act on behalf of the Township and to direct Township employees Defendants Daniel Sell and Sandy Nicolo, a code enforcement officer and now an assistant Township manager, to take actions to (allegedly) make sure that Brinton retains exclusive private

---

[2]      Because Thorpe did not have leave to assert claims against anyone other than the Township Defendants, only facts pertaining to the Township Defendants are included here.

control over Trout Street.  *Id.* ¶¶ 19, 111.  Nicolo and Sell each knew or should have known about the fraudulent scheme between the Township and Brinton concerning possession and control of Trout Street.  *Id.* ¶¶ 104, 111, 117.  By blocking Trout Street for Brinton's private, personal use, the Township increased the value of her two homes with land she did not buy, while decreasing the value of Thorpe's home so that neighbors who have property on Trout Street can access their property without disturbing Brinton.  *Id.* ¶¶ 79-80.  Brinton's husband told people in the neighborhood: "You know us whites have got to stick together" and "The Thorpes are black."  *Id.* ¶ 78.

Gregory Reihman owns property immediately adjacent to Thorpe's property on the western side.  *Id.* ¶ 52.  Reihman's property has frontage on Emmaus Avenue and on Trout Street.  *Id.* ¶ 54.  Because the Township blocked Trout Street, Reihman and his tenants use Thorpe's driveway.  *Id.*  Reihman met with Nicolo about Thorpe's driveway and Nicolo, who was under Brinton's supervision, told Reihman he can do anything he wants to do on Thorpe's property.  *Id.* ¶¶ 53, 107.  Reihman has damaged Thorpe's fence, dumped yard waste on his property, destroyed Thorpe's landscaping, and allowed Reihman's dogs, chickens, and children to roam freely on Thorpe's property.  *Id.* ¶ 55.  On or about January 1, 2023, Reihman permanently placed a trailer on Trout Street in violation of local ordinance, which causes the same damages just noted.  *Id.* ¶ 57.  The Township allegedly knows and approves of Reihman's action as a reward for harassing Thorpe.  *Id.* ¶¶ 56-57.

Beginning years before the issues regarding Trout Street began, the Township failed to respond to Thorpe's complaints that his neighbors, the Suhockis, since July 2019, created and maintained a nuisance by constructing a drainage system that directed their water within inches of Thorpe's fence, causing the east side of his fence to fall down and weakening the ground

underneath the fence.  *Id.* ¶¶ 32-39.  Nicolo, on behalf of the Township and under the supervision and control of Brinton, informed Thorpe that there is nothing that the Township could do about the Suhockis' actions.  *Id.* ¶¶ 36, 105.

Also years prior to the blocking of Trout Street, but allegedly directed by Brinton in support thereof, Nicolo and Sell filed numerous, allegedly frivolous court actions against Thorpe on behalf of the Township.  *Id.* ¶¶ 109, 119.  These court actions were heard by Magistrate Judge Michael Pochron.  *Id.* ¶ 110.  In August 2020, a meeting between Thorpe and Nicolo was scheduled with Judge Pochron to determine the fine Thorpe would pay for his damaged fence. *See id.* ¶ 83.  Nicolo brought Brinton to the meeting.  *Id.* ¶ 84.  Brinton addressed Thorpe, who is not a doctor, as "Dr. Thorpe."  *Id.* ¶¶ 82, 84.  Thorpe replied that if she wants to use his professional title she should call him "Attorney Thorpe."  *Id.* ¶ 86.  Brinton screamed "You are not an attorney. That was a long time ago," allegedly slandering Thorpe.  *Id.* ¶ 88.  Thorpe suggests that because Judge Pochron also referred to him as Dr. Thorpe, he and Brinton must have had ex parte communications about his case prior to the August 2020 meeting.  *Id.* ¶¶ 81, 89.  Thorpe suggests that this was the first time his free speech rights were violated.  *See id.* ¶ 90.

Thorpe's court actions were reassigned to Magistrate Judge Jacob Hammond, who held a hearing on March 8, 2023.  *Id.*  After the hearing, Judge Hammond left the bench, but while still in the courtroom, "engaged in animated hushed discussions with" Nicolo and Brinton "outside of hearing of [Thorpe]."  *Id.* ¶ 97.  Thorpe alleges that the actions of Brinton and Nicolo were done to obstruct justice, harass Thorpe, and stop Thorpe from exercising his free speech rights.  *Id.* ¶¶ 90, 98, 106, 108.  He alleges that Sell helped Brinton obstruct justice and engage in ex parte communications with Judge Hammond.  *Id.* ¶ 118.

### III.     LEGAL STANDARDS

#### A.     Rule 12(b)(6) Motion to Dismiss - Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). *See also* Fed. R. Civ. P. 8(a) (requiring the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). Although the court must liberally construe pro se filings,[3] "a pro se complaint may not survive dismissal if its factual allegations do not meet *Iqbal*'s basic plausibility standard." *Beasley v. Howard*, No. 20-1119, 2021 U.S. App. LEXIS 28041, at *6 (3d Cir. Sep. 17, 2021) (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)).

---

[3]     *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that *pro se* pleadings are to be "liberally construed").

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). The defendant bears the burden of proving that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**B.      Section 1983 - Review of Applicable Law**

Section 1983 provides a private cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "[S]ection 1983 does not create substantive rights; rather it merely provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Estate of Smith v. Marasco*, 318 F.3d 497, 505-06 (3d Cir. 2003). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The initial question is therefore "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Donahue v. Gavin*, 280 F.3d 371, 378 (3d Cir. 2002) (internal quotations omitted). Next, the Court determines whether the defendant is a "person acting under color of state law." *See Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)

(holding that "whether the defendant is a state actor — depends on whether there is such a close

nexus between the State and the challenged action that seemingly private behavior may be fairly

treated as that of the State itself" (internal quotations omitted)).  "[N]either a State nor its

officials acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan Dep't of*

*State Police*, 491 U.S. 58, 65 (1989) (explaining that "a suit against a state official in his or her

official capacity is not a suit against the official but rather is a suit against the official's office").

### C. *Monell* Liability - Review of Applicable Law

"[A] municipality cannot be held liable solely because it employs a tortfeasor -- or, in

other words, a municipality cannot be held liable under § 1983 on a respondeat superior

theory."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  "A plaintiff seeking to hold a

municipality liable under section 1983 must demonstrate that the violation of rights was caused

by the municipality's policy[4] or custom[5]."  *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d

Cir. 2014) (citing *Monell*, 436 U.S. at 691).  The policy or custom must be unconstitutional itself

or be "the 'moving force' behind the plaintiff's deprivation of federal rights."  *Bd. of the Cty.*

*Comm'rs v. Brown*, 520 U.S. 397, 400 (1997); *Colburn v. Upper Darby Twp.*, 946 F.2d 1017,

1027 (3d Cir. 1991).  The plaintiff must show either: (1) an employee acted pursuant to a formal

policy or a standard operating procedure; (2) the alleged violations were taken by a person with

---

[4]     "A municipal policy, for purposes of Section 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers."  *Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *10-11 (E.D. Pa. June 30, 2008) (citing *Monell*, 436 U.S. at 690).  "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  *Andrews v. Philadelphia*, 895 F.2d 1469, 1471 (3d Cir. 1990).

[5]     A custom, although not authorized by written law, has the force of law because it is such a permanent and well-settled practice.  *See Monell*, 436 U.S. at 690.  A "custom may be established by proving knowledge of, and acquiescence to, a practice."  *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007).  "Custom requires proof of knowledge and acquiescence by the decisionmaker."  *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

policy-making authority; or (3) an official with such authority has ratified the unconstitutional

actions of a subordinate.  *See McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005); *Phillis v.*

*Harrisburg Sch. Dist.*, 430 F. App'x 118, 123 n.7 (3d Cir. 2011).

      **D.**      **Civil Conspiracy – Review of Applicable Law**

      "In Pennsylvania, 'to state a cause of action for civil conspiracy, the following elements

are required: (1) a combination of two or more persons acting with a common purpose to do an

unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act

done in pursuance of the common purpose; and (3) actual legal damage.'"  *Gen. Refractories Co.*

*v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting *Strickland v. Univ. of*

*Scranton*, 700 A.2d 979, 987-988 (Pa. Super. Ct. 1997)).  "To demonstrate the existence of a

conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an

agreement to deprive him or her of a constitutional right under color of law."  *Laurensau v.*

*Romarowics*, 528 F. App'x 136, 140 (3d Cir. 2013) (internal quotations omitted).  The plaintiff

must assert specific facts from which a conspiratorial agreement can be inferred, including the

times and places of meetings and the general role of each conspirator.  *See Great W. Mining &*

*Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178- (3d Cir. 2010); *Marroni v. Sykes*, No.

91-6206, 1992 U.S. Dist. LEXIS 9155, at *10 (E.D. Pa. June 23, 1992).

      **E.**      **Equal Protection Clause of Fourteenth Amendment – Review of Applicable**

**Law**

      The Equal Protection Clause of the Fourteenth Amendment prohibits states from

purposefully discriminating between individuals on the basis of race.  *Shaw v. Reno*, 509 U.S.

630, 642 (1993).  "To succeed on an equal protection claim based upon racial discrimination, a

plaintiff must allege that he is a member of a protected class, that the defendant intended to

discriminate, and that the plaintiff suffered disparate impact based upon race." *Watford v.*
*Millville Police Dep't*, No. 09-6111, 2010 U.S. Dist. LEXIS 77432, at \*19 (D.N.J. July 27,
2010). "Intentional discrimination can be shown when: (1) a law or policy explicitly classifies
citizens on the basis of race; (2) a facially neutral law or policy is applied differently on the basis
of race; or (3) a facially neutral law or policy that is applied evenhandedly is motivated by
discriminatory intent and has a racially discriminatory impact." *Antonelli v. New Jersey*, 419
F.3d 267, 274 (3d Cir. 2005) (internal citations omitted).

F.      **The Fair Housing Act – Review of Applicable Law**

The Fair Housing Act ("FHA") prohibits discriminatory housing practices on the basis of
race, color, religion, sex, familial status, or national origin. *See* 42 U.S.C. §§ 3601-3619. "The
FHA can be violated by either intentional discrimination [disparate treatment] or if a practice has
a disparate impact on a protected class." *Mount Holly Gardens Citizens in Action, Inc. v. Twp. of
Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011). "Generally, to prevail on a disparate treatment
claim, a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor'
behind the challenged action." *Cmty. Servs. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 177 (3d Cir.
2005). "As for a disparate impact claim, a plaintiff is required to to prove absent a
discriminatory intent on the part of the defendant, the effects of defendant's action were
nonetheless discriminatory." *Altieri v. Bethlehem Developers*, No. 03-2732, 2005 U.S. Dist.
LEXIS 646, at \*13 (E.D. Pa. Jan. 14, 2005) (internal citations omitted).

G.      **The Right to Travel – Review of Applicable Law**

Although the Constitution does not explicitly provide for the right to travel, the Supreme
Court ruled that "the 'constitutional right to travel from one State to another' [interstate] is firmly
embedded in our jurisprudence." *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (quoting *United States*

*v. Guest*, 383 U.S. 745, 757 (1966)). *See also Kent v. Dulles*, 357 U.S. 116, 125 (1958) ("The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment."); *Bell v. Maryland*, 378 U.S. 226, 255 (1964) ("The right of any person to travel interstate irrespective of race, creed, or color is protected by the Constitution.").  The Third Circuit Court of Appeals has also recognized the right to intrastate travel.  *See Lutz v. York*, 899 F.2d 255, 269 (3d Cir. 1990) ("We conclude that the right to move freely about one's neighborhood or town, even by automobile, is indeed implicit in the concept of ordered liberty and deeply rooted in the Nation's history." (internal quotation marks omitted)). However, "the right to travel cannot conceivably imply the right to travel whenever, wherever and however one pleases --even on roads specifically designed for public travel."  *Lutz*, 899 F.2d at 269.  "[S]tate and local governments must enjoy some degree of flexibility to regulate access to, and use of, the publicly held instrumentalities of speech and travel."  *Id.*  State law implicates the right to travel in three circumstances: [1] "when it actually deters such travel, [2] when impeding travel is its primary objective, or [3] when it uses any classification which serves to penalize the exercise of that right."  *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (internal citations omitted).  Not every government burden on the right to travel is subject to strict scrutiny.  *Lutz*, 899 F.2d at 269-70 (applying intermediate scrutiny to a cruising ordinance and upholding it as "a reasonable time, place and manner restriction on the right of localized intrastate travel").

## H.    Defamation – Review of Applicable Law

To state a claim for defamation under Pennsylvania law, a plaintiff must establish:

(1) [t]he defamatory character of the communication; (2) [i]t's publication by the defendant; (3) [i]ts application to the plaintiff; (4) [t]he understanding by the recipient of its defamatory meaning; (5) [t]he understanding by the recipient of its defamatory meaning; (5) [t]he understanding by the recipient of it as intended to be

applied to the plaintiff; (6) [s]pecial harm resulting to the plaintiff from its publication; [and] (7) [a]buse of a conditionally privileged occasion.

*Preston v. Fid. Brokerage Servs.*, No. 20-1612, 2022 U.S. App. LEXIS 8362, at *6-7 (3d Cir. Mar. 30, 2022) (citing 42 Pa. C.S. § 8343(a)).  "'A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'"  *Blossoms & Blooms, Inc. v. Doe*, No. 22-1557-KSM, 2022 U.S. Dist. LEXIS 136226, at *9 (E.D. Pa. July 29, 2022) (citing *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 215 (Pa. 1981)).  "[T]he statement must do more than merely embarrass or annoy the plaintiff; it must provoke 'the kind of harm which has grievously fractured [one's] standing in the community of respectable society.'"  *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (quoting *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004)).  "Courts in Pennsylvania and elsewhere have long recognized a distinction between actionable defamation and mere obscenities, insults, and other verbal abuse."  *Beverly Enters. v. Trump*, 182 F.3d 183, 187 (3d Cir. 1999).

## I.    Eleventh Amendment Immunity - Review of Applicable Law

"[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies."  *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).  "Individual state employees sued in their official capacity are [] entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state."  *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  *But see O'Callaghan v. X*, 661 F. App'x 179, 182 (3d Cir. 2016) (holding that "the Eleventh Amendment does not generally bar prospective declaratory or injunctive relief" if the plaintiff alleges sufficient facts that it is "substantially likely that he would suffer future injury").  Although a state can waive immunity, "Pennsylvania

has not waived its immunity under Section 1983." *Bartlett v. Kutztown Univ.*, No. 13-4331,

2015 U.S. Dist. LEXIS 21665, at *38 (E.D. Pa. Feb. 23, 2015).[6]

## IV.   DISCUSSION

### A.   The official-capacity claims against Defendants Brinton, Nicolo, and Sell are barred by Eleventh Amendment immunity.

The Second Amended Complaint identifies the individual Township Defendants as

"employees" of the Township.  Because "individual state employees sued in their official

capacity are [] entitled to Eleventh Amendment immunity," *see Betts*, 621 F.3d at 254 (quoting

*Hafer*, 502 U.S. at 25), the claims against Brinton, Nicolo, and Sell in their official capacities are

dismissed.[7]

### B.   Thorpe fails to plead sufficient allegations to show discrimination.

To the extent Thorpe alleges that his rights under the Fair Housing Act and/or Equal

Protection Clause of the Fourteenth Amendment were violated, he fails to plead sufficient factual

allegations to show that he was discriminated against on the basis of race.  Aside from Thorpe's

conclusory allegations of race discrimination, which are not accepted as true, *see Iqbal*, 556 U.S.

at 678, the only factual allegation suggesting discrimination relates to comments by Brinton's

husband, a private individual, *see* Sec. Am. Compl. ¶ 78.  Thorpe fails to allege when such

statements were made or, more importantly, that any of the Township Defendants adopted these

---

[6]      *See* 1 Pa. C.S.A. § 2310 (The "Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."); 2 Pa. C.S. § 8522(b) (listing the nine areas in which immunity has been waived).

[7]      Moreover, the § 1983 claims against these Defendants are not cognizable because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *See Will*, 491 U.S. at 65 (explaining that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office").

statements or made similar ones.  The Second Amended Complaint is devoid of any specific

factual allegations that would show the Township Defendants acted "based on" Thorpe's race.

*See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979) (holding that discriminatory

purpose, as required to state a violation of the Equal Protection Clause, "implies that the

decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because

of,' not merely 'in spite of,' its adverse effects upon an identifiable group"); *Carter v. Murray*,

No. 21-3289, 2021 U.S. Dist. LEXIS 175130, at *9-10 (E.D. Pa. Sep. 14, 2021) (dismissing FHA

claims because the plaintiff's generalized allegations of race-based actions were insufficient to

state a claim).

Moreover, the Township's closure of Trout Street impacted all persons owning property

on Trout Street regardless of their race.  Although Thorpe alleges to have experienced disparate

impact because his white neighbors chose to use Thorpe's driveway to detour the Trout Street

closure, the Township cannot be held liable for the actions of Thorpe's neighbors.  *See Am. Mfrs.

Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) ("Action taken by private entities with the mere

approval or acquiescence of the State is not state action."); *Mark v. Borough of Hatboro*, 51 F.3d

1137, 1150 (3d Cir. 1995) (holding that states are generally under no affirmative duty to protect

citizens from torts committed by private individuals (citing *Deshaney v. Winnebago Cty. Dep't

of Soc. Servs.*, 489 U.S. 189 (1989)).

Since the Second Amended Complaint fails to allege sufficient facts to show that the

Township Defendants acted with a discriminatory purpose or intent, any FHA and equal

protection claims are lacking.  *See Feeney*, 442 U.S. at 272 (holding that where "a neutral law

has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the

Equal Protection Clause *only if* that impact can be traced to a discriminatory purpose"); *Wilson v.

*Hillsborough Twp. Constr. Dep't*, 779 F. App'x 969, 972 (3d Cir. 2019) (concluding that vague, conclusory speculations that the defendants' decisions were made for a discriminatory reason were insufficient to state a claim under the FHA).

      **C.**    **The Amended Complaint fails to state any speech-related claims.**

      To the extent Thorpe makes brief reference to a violation of his First Amendment free speech rights, the allegations are insufficient to state a claim.  This claim is based on two alleged incidents: one is the alleged ex parte communications between Brinton and Judge Pochron and the second is the alleged ex parte communications between Brinton and Judge Hammond.  *See* Sec. Am. Compl. ¶¶ 89-90, 97-98.  However, Thorpe makes no allegations that he was ever prevented from speaking or otherwise communicating.[8]  *See* U.S. Const. Amend. I (The First Amendment's Free Speech Clause provides: "Congress shall make no law . . . abridging the freedom of speech.").  This claim is therefore meritless.

      Thorpe's suggestion that Brinton defamed him when, after being corrected for referring to him as "Dr. Thorpe," stated "You are not an attorney. That was a long time ago," *see* Sec. Am. Compl. ¶ 88, is also meritless.  To be actionable, "'the statement must do more than merely embarrass or annoy the plaintiff; it must provoke the kind of harm which has grievously fractured [one's] standing in the community of respectable society.'"  *Blossoms & Blooms, Inc.*, 2022 U.S. Dist. LEXIS 136226, at *9 (citing *Graboff*, 744 F.3d at 136).  There are no allegations, nor any reason to believe, that this one statement provoked such harm.  Thorpe's legal standing was not at issue at the time of the communication, nor were any clients alleged to be in earshot of and influenced by the statement.  This lone statement simply does not rise to the

---

[8]      Moreover, the allegations are insufficient to show that either communication had anything to do with Thorpe or with his case or were otherwise improper.

level of a defamatory communication.  *See Kryeski v. Schott Glass Techs.*, 626 A.2d 595, 600-01

(Pa. Super. 1993) (holding that certain types of communications, even if offensive to the subject,

do not rise to the level of defamation, such as expressions of opinion and statements which are

merely annoying or embarrassing).

>        **D.**        **Thorpe fails to state a claim for a violation of the right to travel.**

For the reasons previously explained, the allegations are insufficient to show that the

closure of Trout Street was based on Thorpe's race.  Additionally, Thorpe does not allege that

the street closure actually deterred his travel.  *See* Sec. Am. Compl. ¶ 12 (alleging only that the

Township's closure of Trout Street prevents his "normal ingress and access to his property");

O*wner Operator Indep. Drivers Ass'n v. Pa. Tpk. Comm'n*, 934 F.3d 283, 295 (3d Cir. 2019) ("A

law does not actually deter travel merely because it makes it somewhat less attractive for a

person to travel interstate or it is not the most convenient form of travel." (internal citations

omitted)).  Finally, although liberal construction of the allegations might suggest that the primary

purpose of closing Trout Street was to impede travel so as to give control of the road to Brinton,

the Second Amended Complaint alleges that the road was closed with the simple use of a chain.

Accordingly, there is no alleged Township ordinance or other regulation whose primary

objective was to impede travel, which also precludes court scrutiny as to whether such an

impediment is unconstitutional.  *See, e.g. Douris v. Huff*, 260 F. App'x 441, 443 (3d Cir. 2008)

(concluding that the six-week road closure to install a sanitary sewer line was a reasonable time,

place, manner restriction).

E.      **The allegations are insufficient to state a conspiracy claim.**

In his earlier pleading, Thorpe alleged a civil conspiracy claim.  Aside from one conclusory statement,[9] the Second Amended Complaint is devoid of factual allegations of a conspiracy.  In response to the Motion to Dismiss; however, Thorpe states that he did intend to bring a conspiracy claim.  *See* Resp., ECF No. 74.

"[A]lthough the allegations in a civil rights complaint are not held to a heightened pleading standard, a plaintiff must assert facts showing a conspiracy with some particularity." *Humphreys v. PPL Elec. Utils. Corp.*, No. 12-4334, 2014 U.S. Dist. LEXIS 154819, at *5-6 (E.D. Pa. Oct. 30, 2014) (internal citation omitted).  "[T]he bare allegation of an agreement is insufficient to sustain a conspiracy claim."  *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012).  Thorpe's allegation of concerted action is conclusory and therefore insufficient to state a claim. *See Great W. Mining & Mineral Co.*, 615 F.3d at 176 (holding that the court does "not consider any conclusory allegations that there was 'a corrupt conspiracy,' 'an agreement,' or 'an understanding in place between the Defendants and [state officials]" and that the plaintiff failed to allege, *inter alia*, the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy).

Liberally construing the pleadings, this Court also considers Thorpe's allegations that Nicolo and Sell "helped" Brinton to commit some of the alleged violations.  *See* Sec. Am. Compl. ¶¶ 107, 111, 118.  Again, these allegations are conclusory.  Moreover, they are insufficient to show these Defendants reached any agreements about, or had any involvement in,

---

9       *See* Sec. Am Compl. ¶ 22 ("The overt conduct of each of the Defendants as described above and below, acting in concert with each other to advance the purpose of illegally seizing public land for private use, violates the Fourteen Amendment of the United States Constitution and the Federal Fair Housing Act to knowingly and maliciously injure and harm the Plaintiff and the Plaintiff's use of his private property.")

any violation of his rights. Thorpe alleges that the actions of Nicolo and Sell, which date back to 2019 and 2020, were taken to support the allegedly fraudulent scheme by Brinton to take control of Trout Street in 2022, but these actions are temporally remote and relate primarily to the alleged ex parte communications, which this Court has previously explained were not improper. *See Plouffe v. Gambone*, No. 11-6390, 2012 U.S. Dist. LEXIS 85405, at *17 (E.D. Pa. June 20, 2012) (dismissing the § 1983 claims because there were no facts connecting the defendant's actions or failure to act with state actors, suggesting a meeting of the minds, or otherwise supporting a plausible inference of conspiracy). The Second Amended therefore fails to sufficiently plead a conspiracy claim.

## F.      The allegations are insufficient as to the Township Defendants.

Even if Thorpe had stated a viable cause of action, the allegations are insufficient to impute liability on any of the Township Defendants. The Second Amended Complaint does not refer to any Township policy, custom, or practice. *See Monell*, 436 U.S. at 691. When this Court directed Thorpe to file a more definite statement, it warned him that if he "wants to assert[] a *Monell* claim, he must specify what exactly was the custom or policy." Opn. 18 (quoting *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009)). This Court further noted that Thorpe failed to allege that any of the individual Defendants were policymakers. *See id.* at 17 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (holding that "municipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."); *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) (Although the determination as to whether a person "is a final policymaker is ultimately a legal rather than a factual question, that does not relieve

[the plaintiff] of the obligation to plead in some fashion that he had final policy making authority, as that is a key element of a *Monell* claim." (internal citation omitted))). The Second Amended Complaint alleges that the Township gave the individual Defendants Brinton, Sell, and Nicolo authority to act, but again fails to allege that any of these individuals were policy makers. Further, the allegations of personal involvement by these defendants in the alleged constitutional violations is speculative at best. In fact, Thorpe admits that his allegations against Nicolo and Sell are based on the legal theory of respondeat superior, *see* Sec. Am. Compl. ¶¶ 103, 116, but that is not a viable theory under § 1983, see *Rode*, 845 F.2d at 1207.

For all these reasons, all claims and defendants are dismissed with prejudice.[10]

## V.      CONCLUSION

Despite numerous attempts, Thorpe has failed to state a violation of any constitutional right. Rather, this action essentially involves Thorpe's complaints about his neighbors' disrespectful conduct, but he cannot hold the Township Defendants liable for the acts of private individuals. All claims and defendants are dismissed with prejudice.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr._____*
JOSEPH F. LEESON, JR.
United States District Judge

---

[10]      When granting the Township Defendants' motion for a more definite statement, this Court warned Thorpe that the second amended complaint must "contain sufficient factual allegations to support each claim asserted against these Defendants as he will not be permitted leave to amend a third time in response to a motion to dismiss." Opn. 17. Since Thorpe has been given multiple opportunities to amend his pleadings to sufficiently state a claim, additional leave to amend would be futile and inequitable. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (holding that although a pro se plaintiff should normally be given an opportunity to file a curative amendment, leave to amend need not be granted where an "amendment would be inequitable or futile").